IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. MARINKOVIC, | ) | |
| | ) | |
| Plaintiff, | ) | 14-cv-49 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| DAVID K. BATTAGLIA ET AL, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff is a serial *pro se* filer (apparently with a law degree from Oxford) who has filed

litigation in this court (and plenty of others) many, many times before. *See Marin[1] v. Biros*,

2014 WL 2600223, at *1 (W.D. Pa. June 10, 2014) (detailing a sampling of Plaintiff's litigation

history and *pro se* litigation tactics); *Marin v. Escondido Care Ctr.*, 2012 WL 5463688, at *1

(S.D. Cal. Nov. 7, 2012). In this action, Plaintiff has filed an Amended Complaint and

Defendants followed with a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). At this

juncture, the Court will dismiss all but two (2) of Plaintiff's claims against certain individual

Defendants. Time will tell whether the factual allegations in the Amended Complaint as to those

remaining narrow claims will be tempered (or melted) in the fires of discovery.[2]

---

[1] Sometimes as "Mel," sometimes as "Marin," sometimes as "Melvin," sometimes as "Marinkovic," and sometimes just as "M."

[2] Of course, by signing his name to the Complaint and other filings, Plaintiff has certified that "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11. Were the Court to conclude that any pleading was filed in contradiction of this certification, the Court would be free to "impose an appropriate sanction." *Id.*

1

Plaintiff contends that from 2011 to 2013 he made inquiries to the Armstrong County Treasurer's Office about the process for buying residential property owned by the County through means other than public auctions. Plaintiff was told that there is a direct private bid process, and that such private bids were kept confidential. Therefore, Plaintiff visited and inspected dozens of properties and eventually made offers to buy several properties; Plaintiff was told by the Tax Claim Bureau staff that there were no competing bids on these properties. However, each submission was eventually denied or stopped because other buyers stepped forward at the last minute to overbid Plaintiff. According to Plaintiff, this occurred because the County Tax Claim Bureau would inform other government officials of Plaintiff's bids so that they could secretly outbid him at every turn. Eventually, Plaintiff wrote a letter to the County Commissioners complaining of this process, but the process continued until the County Commissioners decided to end the private-sale process entirely.

Now, Plaintiff brings a litany of constitutional and state-law claims against Armstrong County, Pennsylvania and three Armstrong County Commissioners.[3] Initially, it is worth noting that Plaintiff's constitutional claims are brought both "directly" and through § 1983. It is not patently clear whether it makes any practical difference *how* the claim is specifically stated, but the Third Circuit has noted that § 1983 claims "wholly subsume" direct constitutional claims. *Rogin v. Bensalem Twp.*, 616 F.2d 680, 686 (3d Cir. 1980). Therefore, the direct constitutional claims plead as such are dismissed; they are considered to be asserted through § 1983.

## I. First Amendment Retaliation

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of

---

[3] He sues them in both their official and individual capacities. Of course, claims against individual government officials in their official capacity merge with the claims against the municipality. *See Pennavaria v. Walton*, 2010 WL 2650413, at *4 (W.D. Pa. June 30, 2010) (citing *Gregory v. Chehi,* 843 F.2d 111, 120 (3d Cir.1988)).

ordinary firmness from exercising his constitutional rights, and (3) a causal link between the
constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d
285, 296 (3d Cir. 2006). "[A]s a general matter the First Amendment prohibits government
officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v.
Moore*, 547 U.S. 250, 256 (2006).

### A. Constitutionally Protected Conduct

To begin, Plaintiff *has* alleged constitutionally protected conduct—sending a letter of
complaint and draft court complaint to each of the County Commissioners alleging that his civil
rights had been violated and requesting redress.    Specifically, the First Amendment guarantees
"the right of the people . . . to petition the Government for a redress of grievances." U.S. Const.
amend. I. This "right to petition extends to all departments of the Government, including
administrative agencies, . . . and encompasses formal and informal complaints, . . . about matters
of public and private concern." *Cole v. Encapera*, 2015 WL 8528449, at *5 (W.D. Pa. Dec. 11,
2015) (quoting *Arneault v. O'Toole*, 513 F. App'x 195, 198 (3d Cir. 2013)) (omissions in
original). Protected conduct "literally involves petitioning the government, either through formal
mechanisms, such as lawsuits, grievances and workers compensation claims, or informal
mechanisms, such as letters to the government." *Gardner v. Barry*, 2010 WL 4853885, at *10
(M.D. Pa. Nov. 23, 2010). *See also Foraker v. Chaffinch*, 501 F.3d 231, 237 (3d Cir. 2007)
*abrogated on other grounds by Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011)
("Informal petitions may include letters such as those at issue in *McDonald* [*v. Smith,* 472 U.S.
479 (1985)] and *Schalk v. Gallemore,* 906 F.2d 491 (10th Cir.1990)"). [4] Here, the Plaintiff
petitioned the County Commissioners alleging that his civil rights had been violated by the Tax

---

[4] Since Plaintiff spoke as a private citizen rather than a public employee, his speech need not meet a threshold
showing that it constituted matters of "public concern." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 284 (3d Cir.
2004).

Claim Bureau's denial of his housing bids. The allegations contained in the letter may or may not be entirely true (or true at all), but they constitute a petition to the government for a redress of grievances, and thus, Plaintiff's letter constitutes protected speech. *See Lombardi v. Cosgrove*, 7 F. Supp. 2d 481, 496 (D. N.J. 1997), *aff'd*, 216 F.3d 1076 (3d Cir. 2000) ("Complaints about a public agency's misfeasance, internal operations, or administration are protected speech, but speech to an air a personal grievance is not.").

### B. Retaliatory Action

Thus, the Court must assess whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *See McKee v. Hart,* 436 F.3d 165, 170 (3d Cir.2006). Plaintiff alleges that, in response to his filing of the December 2013 Complaint, Defendants retaliated against him by:

(a) Directing the Tax Claim Bureau Director to stop talking to Plaintiff so that he could not buy any more property

(b) Directing the Tax Claim Bureau Director not to return any phone calls to Plaintiff

(c) Cancelling Plaintiff's offers to buy property on other houses on which he made offers

(d) Submitting Plaintiffs preferred property to a public auction

(e) Announcing that they were cancelling the private bid program

*See* ECF No. 31 at 7–8. Essentially, there are three categories of violations alleged by Plaintiff. First, that Defendants retaliated by refusing to rectify the alleged wrongdoings or further communicate with Plaintiff. Second, that Defendants retaliated by cancelling Plaintiff's offer to buy property on other houses on which he made offers. And third, that Defendants retaliated by ending and replacing the private bidding program.

4

As to the first category, such claims are not actionable under the First Amendment (via § 1983). "Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minnesota State Bd. for Community Colleges v. Knight,* 465 U.S. 271, 285 (1984). *See also Kerchner v. Obama,* 612 F.3d 204, 209 (3d Cir. 2010) ("[Plaintiff's] claims under the First Amendment are without merit because the individual right to petition does not require government policymakers to listen or respond to individuals' communications on public issues."). In other words, Defendants could not retaliate against Plaintiff by *refusing* to communicate with him. The government does not have any First Amendment obligation to respond to a petition for redress (or other such speech), and cannot be held liable for its failure to do so.

While there is not an obligation to respond, there is, however, an obligation to not unconstitutionally retaliate against an individual by taking some *affirmative* action. Thus, Plaintiff's claims that Defendants cancelled Plaintiff's outstanding property bids because he petitioned the government would be actionable so long as this conduct would "deter a person of ordinary firmness from exercising his or her First Amendment rights." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (internal quotations omitted). As the Third Circuit has stated, this deterrence threshold "is very low" and "a cause of action is supplied by all but truly *de minimis* violations." *Id.* The Court concludes that the alleged cancellation of Plaintiff's outstanding offers meets this low deterrence threshold, and thus could constitute retaliatory conduct.

Finally, as to Plaintiff's claim that the Defendant County Commissioners retaliated by cancelling the private bid program, these claims are barred by the doctrine of legislative

5

immunity. Local legislators enjoy absolute immunity from personal liability under § 1983 for any acts taken in their legislative capacity. *Aitchison v. Raffiani,* 708 F.2d 96 (3d Cir.1983).

> There are two requirements which an act must meet in order to be regarded as legislative for immunity purposes. First, the act must be "substantively" legislative, i.e. legislative in character. Legislative acts are those which involve policy-making decision[s] of a general scope or, to put it another way, legislation involves line-drawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration. In addition, the act must be "procedurally" legislative, that is, passed by means of established legislative procedures. This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve.

*Ryan v. Burlington Cty., N.J.*, 889 F.2d 1286, 1290 (3d Cir. 1989).

Plaintiff attacks the application of legislative immunity by noting that Defendants have not introduced any evidence that the discontinuation of the private bid program was effectuated through traditional legislative procedures (such as a legislative vote). But Plaintiff, himself recognizes in his Complaint that this was a "legislative act." ECF No. 31 at 8. Though Plaintiff thinks that this legislative act was a "cover-up" effectuated only to stop Plaintiff from getting property through the private bid program, *See* ECF No. 31 at 8, "a defendant's intent and motive are immaterial to whether certain acts are entitled to legislative immunity." *Baraka v. McGreevey*, 481 F.3d 187, 200 (3d Cir. 2007). The decision of the County Commissioners to end the private bid program is protected by legislative immunity, and thus, it cannot constitute a retaliatory action for purposes of a § 1983 claim against them.

## C. Causation

6

The final element of a First Amendment Retaliation claim is to show "a causal link between" Plaintiff's complaint to the Tax Claim Bureau and the Defendant's cancellation of Plaintiff's bids (the only pled retaliatory conduct on which Plaintiff can state a claim). *Thomas*, 463 F.3d at 296. Defendants do not contest that Plaintiff's Amended Complaint establishes such a causal link, and the Court finds such a link is adequately pled. The alleged retaliatory action directly relates to the alleged protected conduct, and Plaintiff contends that these actions were undertaken "right after [Defendants] got the complaint." *See Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001) ("[Plaintiff] has demonstrated a suggestive temporal proximity between his insistence on his First Amendment rights and [the retaliatory action].").

### D. Municipal Liability?

As such, Plaintiff has stated a narrow claim for First Amendment retaliation: in retaliation for petitioning the County Commissioners about the operation of the private bid program, Defendants cancelled Plaintiff's outstanding bids. Plaintiff's claims based on any other allegedly retaliatory conduct are not actionable, and are dismissed with prejudice.

Of further note, this claim can lie only against the three individual county commissioners—David Battaglia, Robert Bowe, and Richard Fink. This claim is not actionable against the municipality, Armstrong County. To plead a claim of municipal liability, Plaintiff must plead that the alleged municipal actions constitute either a "policy" (which exists "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict," *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)) or a "custom" (which is established "when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law, *id.*). Plaintiff has not pointed this Court to any official proclamation,

7

policy, or edict implementing the cancellation of Plaintiff's bids. Indeed, Plaintiff provides almost no insight into *how* the bids were actually cancelled by the actions of the Commissioner-Defendants. Likewise, the crux of Plaintiff's claim is that the cancellation of Plaintiff's bids was a unique retaliatory action taken only against him in retaliation for his protected speech, and not the result of an established policy or procedure. As such, Plaintiff has not pled that there is some bid-cancelling practice of the government officials that is "so permanent and well settled as to virtually constitute law," as is necessary to establish a "custom." *Id.* Having failed to plead that the bid cancellation was undertaken pursuant to some "policy" or "custom" Plaintiff's remaining First Amendment retaliation claim is dismissed as to Armstrong County.

Thus, to reiterate, only the narrow claim for First Amendment retaliation pertaining to the Commissioners' cancellation of outstanding bids survives, and only against the three individual Commissioner-Defendants (Defendants Battaglia, Bower, and Fink).

## II. Procedural Due Process

Plaintiff's second claim for relief relates to the procedural due process protections of the Fourteenth Amendment. In reviewing such a claim, courts examine "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'; and (2) whether the procedures available provided the plaintiff with due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Plaintiff has not pled that the actions of the Defendants have violated any of Plaintiff's protected property or liberty interests.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Thus, to have a property interest in something

8

"a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Such "entitlements" are not created by the Constitution; instead they are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Plaintiff puts forth two property interests and one liberty interest in which he claims that he has right to sufficient process of law:

(a) Property interest in a fair bidding procedure

(b) Property interest or right to have the contract he started with the County completed under the terms that were given to him when he started

(c) Liberty interest or right in continuing his real estate business and his "election business" in Armstrong County

*See* ECF No. 31 at 15 –18. Let's take them one at a time.

First, Plaintiff does not have a due process property interest in a fair bidding procedure. Plaintiff has not pointed the Court to any "independent source" that would provide the basis for such a property interest, and the Court has not found one either. Indeed, in *Indep. Enters. Inc. v. Pittsburgh Water and Sewer Auth.,* 103 F.3d 1165 (3d Cir.1997), the Third Circuit held that even Pennsylvania bidding laws do not create a property interest that would trigger the protection of the Due Process Clause. *Id.* at 1178–79. True, the Pennsylvanian Supreme Court has found that taxpayers have standing to enjoin the award of a public contract to anyone other than the lowest bidder once bids are accepted, *see Lutz Appellate Printers, Inc. v. Com., Dep't of Prop. & Supplies*, 472 Pa. 28, 33 (1977), but there is no "independent source" (of state law or otherwise) that provides a property interest in a fair bidding procedure, such that the protections of the due process provisions of the Constitution would be triggered. *See Labalokie v. Capital Area*

9

*Intermediate Unit*, 926 F. Supp. 503, 508 (M.D. Pa. 1996) ("It is settled law that there can be no property interest in obtaining future government contracts, and that suspension or debarment from bidding on such contracts only implicates a liberty interest if it is based upon charges of fraud or dishonesty.").

Likewise, Plaintiff does not have a property interest in having the contract he allegedly started with the County completed under the terms that were given to him when he started. Plaintiff alleges that he had two contracts with the County—one "a unilateral oral agreement that required the County to execute the private sale program in the manner they represented to [Plaintiff] when he started" and another which was "the implied contract of good faith and fair dealing which is imposed into every agreement for a land transaction in this state whether or not there is anything in writing that says so." *See* ECF No. 31 at 16. Whether either of these two agreements actually existed as a legal matter will be assumed for purposes of this Due Process analysis. Still, the Third Circuit has recognized only two general types of contracts that create protectable property interests: "(1) where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits; or (2) where the contract itself includes a provision that the state entity can terminate the contract only for cause." *Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*, 49 F.3d 915, 932 (3d Cir. 1995) (internal quotations omitted). Since Plaintiff's alleged contracts do not fall under either of these two classes of contracts, Plaintiff does not have a protected property interest in the enforcement of his alleged contracts with the government. *See Pence v. Mayor & Twp. Comm. of Bernards Twp.*, 453 F. App'x 164, 168 (3d Cir. 2011).

Finally, Plaintiff has not pled a sufficient violation of his liberty interests to pursue a chosen occupation—specifically, "continuing his real estate business and his election business in Armstrong County." ECF No. 31 at 17. "The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments." *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1259 (3d Cir. 1994). However, "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Id.* Thus, "[t]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits . . . brought directly under the due process clause." *Id.* (alterations in original). There is nothing in Plaintiff's Amended Complaint to suggest that the Defendants have barred him from continuing a real estate business or serving as a public official. Plaintiff has pled that Defendants' actions have frustrated one avenue through which Plaintiff hoped to profit off of his real estate business in a certain way, but Plaintiff has not pled that his ability to pursue any line of business has been precluded or prohibited. *See Latessa v. New Jersey Racing Comm'n*, 113 F.3d 1313, 1318 (3d Cir. 1997).

## III. Supremacy Clause and Contract Clause Claims

In his third claim for relief, Plaintiff brings claims for violation of the Supremacy Clause (Article VI, Section 2) and the Contract Clause (Article I, Sectoin 10) of the U.S. Constitution.

First, the Supremacy Clause is a rule of decision and does not create any right of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) ("[T]he Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action. It

11

instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so.").

As for the Contract Clause claim, a Plaintiff must demonstrate that a "change in state law has operated as a substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 873-74 (3d Cir. 2012).

Above, the Court assumed that Plaintiff had pled the existence of some contract in order to determine whether any such alleged contract could form the basis of a procedural due process claim. Now the Court must actually examine whether Plaintiff has sufficiently pled a contractual relationship, as required for a Contract Clause claim. [5] Plaintiff has not pled the existence of any such contract. Recall that Plaintiff pleads two possible contracts, (1) "a unilateral oral agreement that required the County to execute the private sale program in the manner they represented to [Plaintiff] when he started" and (2) "the implied contract of good faith and fair dealing which is imposed into every agreement for a land transaction in this state whether or not there is anything in writing that says so." *See* ECF No. 31 at 16.

To begin with the first, Plaintiff cannot be alleging that he entered into a contract for the sale of actual property, because such contracts must be in writing under the Statute of Frauds. *See* 33 Pa. Stat. § 1. Thus, Plaintiff must be alleging that this is a contract wherein the County agreed to perform the bid sale process in a certain manner. But there is no allegation that the County or the Tax Claim Bureau made any "offer" for Plaintiff to "accept." Instead, the

---

[5] A court may analyze the existence of a contract pursuant to a 12(b) motion. *See Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 96 (3d Cir. 2011) (affirming that an amended complaint failed to allege the existence of a contract).

12

Complaint only details that the Tax Claim director informed Plaintiff of the County's procedure for selling residential property owned by the County. *See* ECF 31 at 2–3. "[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985). *See also Dodge v. Bd. of Educ. of City of Chicago*, 302 U.S. 74, 79 (1937) ("He who asserts the creation of a contract with the state in such a case has the burden of overcoming the presumption."); *Rector of Christ Church v. County of Philadelphia,* 24 How. 300, 302, 16 L.Ed. 602 (1861) ("Such an interpretation is not to be favored"); *Baraka v. McGreevey*, 2005 WL 5610033, at \*6 (D.N.J. Mar. 22, 2005), *aff'd*, 481 F.3d 187 (3d Cir. 2007) (holding that a statute did not create a contract between the state and the plaintiff). There is no indication that the County (or any other entity) intended to bind itself contractually to a strict adherence of the private sale process rules, and thus, the articulation of these rules to Plaintiff cannot create a binding contract.

As to the second alleged contract—"the implied contract of good faith and fair dealing which is imposed into every agreement for a land transaction in this state whether or not there is anything in writing that says so"—Plaintiff appears to misunderstand the function of the covenant of good faith and fair dealing. "Pennsylvania law recognizes a general duty of good faith and fair dealing *in the performance of a contract*, at least in certain circumstances." *Stewart v. SWEPI, LP*, 918 F. Supp. 2d 333, 343 (M.D. Pa. 2013) (emphasis added). The covenant of good faith and fair dealing does not, itself, create any form of contract, but instead "the covenant of good faith and fair dealing acts as a term of the contract, and that covenant arises from the contract itself." *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d

13

623, 630 (M.D. Pa. 2009). In other words, once a contract is formed, the covenant of good faith and fair dealing may become an implicit term of that contract (in certain situations); however, the covenant is not, itself, a contract.

Since Plaintiff has not pled the existence of a contract, Plaintiff cannot state a constitutional claim under the Contract Clause. *Mabey*, 666 F.3d at 873-74 (3d Cir. 2012).

## IV. Substantive Due Process

In his fourth claim for relief, Plaintiff alleges a violation of substantive due process. There are two avenues of substantive due process depending upon whether a plaintiff challenges the validity of a legislative act or a non-legislative act. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). It is not clear which path Plaintiff hopes to traverse—he may be alleging that the legislative act of cancelling the private bid program violated substantive due process, or he may be alleging that the cancellation of bids violated substantive due process. The Amended Complaint and briefing do not provide much clarity, so the Court will analyze each in turn.

"The first thread of substantive due process applies when a plaintiff challenges the validity of a *legislative* act." *Id.* Here, Plaintiff (presumably) challenges the validity of the County's decision to end the private bid program. "Typically, a legislative act will withstand substantive due process challenge if the government identifies a legitimate state interest that the legislature could rationally conclude was served by the statute, although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny." *Id.* Since there is no fundamental right implicated by Plaintiff's claims "[i]t is enough that the State offers a conceivable rational basis for its action, and the court may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack." *Am.*

14

*Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 367 (3d Cir. 2012) (quotations and alterations omitted). It is "constitutionally irrelevant whether this reasoning in fact underlay the legislative decision." *Id.* (quoting *Flemming v. Nestor,* 363 U.S. 603, 612 (1960)). *See also F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993) ("[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it. Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.") (citations omitted).

Defendants proffer several rational bases for the decision to replace a private bid process with public auctions: "The public auction would provide more transparency; eliminate the opportunity for leaks regarding the fact or amount of competing bids . . . and would generally provide greater efficiency, less delay and overall fairness." *See* ECF No. 37 at 17. Such proffered reasons fulfill the low bar of rational basis review, and rebut the Plaintiff's claim in such regards.

"The second thread of substantive due process, as identified by this Court, protects against certain types of *non-legislative* state action." *Nicholas*, 227 F.3d at 139. However, to prevail on a non-legislative substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 n.12 (3d Cir. 2006) (quoting *Nicholas*, 227 F.3d at 139–40). As noted above, no property or liberty interests protected by the Fourteenth Amendment are implicated by Plaintiff's Amended Complaint. Therefore, Plaintiff cannot state a non-legislative substantive due process claim.

## V. Equal Protection "Class of One"

Plaintiff's next and fifth claim is that he was treated unequally as a "class of one" in violation of the Equal Protection Clause of the Fourteenth Amendment. The Third Circuit has "little jurisprudence discussing this 'class of one' theory," but "it is clear that, at the very least, to state a claim under [this] theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

While the first factor must be pled "with specificity" a complaint need not identify "specific instances where others have been treated differently." *Id.* at 245. Plaintiff's Amended Complaint is internally inconsistent as to whether he was uniquely situated, but—construed liberally as it must be—it appears that Plaintiff has properly pled that he was treated differently from others who were similarly situated. *See Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice, Fed.R.Civ.P. 8(f), keeping in mind that *pro se* complaints in particular should be construed liberally."). Towards the beginning of Plaintiff's Amended Complaint, he insinuates that some select group of insider government agents were abusing their position and power to "see public bids and out-bid innocent bidders." *See* ECF No. 31 at 5. In this regard, the Amended Complaint suggests that Plaintiff was *not* a class of one—he was one of a number of "innocent bidders" who were harmed by the insider actions of the government. Later in the Amended Complaint, however, Plaintiff alleges that Plaintiff was in a unique class because "he was the only buyer who was not allowed to see the confidential bids of others." ECF No. 31 at 33. In this regard, the Amended Complaint claims that Plaintiff was uniquely targeted by the actions of the government; he is,

16

under this understanding of the Amended Complaint, "a hapless private citizen" penalized by public officials. *Strain v. Borough of Sharpsburg, Pennsylvania*, 2006 WL 2087497, at \*5 (W.D. Pa. June 28, 2006), *report and recommendation adopted*, 2006 WL 2089957 (W.D. Pa. July 25, 2006).

The Court is quite conscious of the fact that Plaintiff may be talking out of both sides of his mouth in order to fit the facts of the world to his alleged legal claims. However, this Court is required to construe the claims of a *pro se* plaintiff (even an Oxford-educated frequent filer) liberally and thus it cannot outright reject the possibility that Plaintiff was uniquely subjected to the allegedly unconstitutional government actions here. The Court will note, however, that the viability of this claim going forward rests on Plaintiff's ability to prove that he was *individually and uniquely* subject to the alleged government actions in a manner that no other individual was. *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 287 (3d Cir. 2004) ("[W]e do not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation. It may be very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach.").

Plaintiff has sufficiently (but barely) pled that he was intentionally and uniquely subjected to the government actions here. Finally, Defendants do not—at least in these pleadings—assert that there was a rational basis for treating Plaintiff differently from all of the other bidders in the private bid sale process.

However, as with Plaintiff's First Amendment retaliation claim, Plaintiff has not pointed to any policy or custom which could form the basis of liability against the municipality, Armstrong County. There is no mention of any "official proclamation, policy or edict," or any practice that is "so permanent and well settled as to virtually constitute law," in the Amended

17

Complaint, as is required for municipal liability. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).[6] Indeed, the very nature of a "class-of-one" equal protection claim— which alleges that government actors treated Plaintiff uniquely and separately from all other individuals—runs contrary to any contention that there was an established government custom— which requires a longstanding, permanent course of action on the part of the government. That's not to say that it is *impossible* to plead a customary practice that states a claim for "class of one" equal protection, but it would certainly be a rare factual situation, and one which is not present here.

As such, Plaintiff has adequately pled a "class of one" equal protection claim, but only against the three individual Commissioner-Defendants (Defendants Battaglia, Bower, and Fink).

## VI.  Interference with Prospective or Existing Contract

Plaintiff's sixth claim for relief is a state law claim for interference with a prospective or existing contract of a third party. "Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC v.*

---

[6] Of course, Plaintiff recites the worlds "policy or custom" throughout his Amended Complaint, but reciting such legal conclusions is not enough to state a claim.  A plaintiff must put forward some *factual* support for the position that there is an official policy or an entrenched custom.  Despite Plaintiff's recitation of the "magic language," there is no factual underpinning pled for these claims.

*Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). As above, Plaintiff has not

pled the existence of any contract; thus, for his claims to succeed he must plead a prospective

contractual relation with a third party.[7]

To determine whether there is a prospective contract in a tortious interference case,

Pennsylvania courts consider whether there was an "objectively reasonable likelihood or

probability that the contemplated contract would have materialized absent the defendant's

interference." *Id.* at 213 (citing *Glenn v. Point Park Coll.*, 441 Pa. 474 (1971)). "A reasonable

likelihood of occurrence is something less than a contractual right but more than a mere hope

that there will be a future contract." *Acumed LLC*, 561 F.3d at 213 (citing *Phillips v. Selig,* 959

A.2d 420, 428 (Pa. Super. Ct. 2008)).

Plaintiff alleges that "by spending time and money to inspect properties and making

proper offers on them when there were no other bidders in some cases for hears, he had a

prospective or future contract between himself and the County." ECF No. 31 at 37. But the fact

that Plaintiff has made bid offers on properties in the past does not provide a sufficiently

reasonable likelihood that any later contract would be entered into with the County (presumably

a contract to sell property to Plaintiff via the proper procedures[8]). Indeed, even where a party

claims that it maintains an existing contract with a counter-party—which, again, Plaintiff has not

---

[7] It is worth noting that "[a] tortious interference with contract claim will only lie where a defendant has interfered
with a plaintiff's contract with a *third party.*" *Labalokie v. Capital Area Intermediate Unit*, 926 F. Supp. 503, 509
(M.D. Pa. 1996) (citing *Daniel Adams Associates v. Rimbach Publishing, Inc.,* 360 Pa. Super. 72, 519 A.2d 997,
1000–01 (1987)). Generally a principle and an agent are not distinct parties for purposes of contracting, and thus a
principal's agent—here, the County Commissioners on behalf of the County—cannot tortuously interfere with its
own contracts. "However, this rule is limited to circumstances in which an agent's conduct occurs within the scope
of her employment." *Labalokie*, 926 F. Supp. At 509. Viewed in a light most favorable to Plaintiff, the Amended
Complaint can be reasonably read to infer that the Defendants were acting outside the scope of their "employment."
*See Id. See also Nonemaker v. York Cty.*, 62 Pa. Cmwlth. 200, 204, (1981) (Reversing a grant of summary
judgment based on the existence of an agency relationship because "[t]he facts have not yet been developed in the
present case; the record contains only conflicting allegations of agency in the pleadings")

[8] *See* 16 P.S. § 2306 (outlining the procedures by which the board of commissioners for a sixth-class county may
sell real property belonging to the county).

19

pled—a prospective contractual relationship must be based on "something other than an existing or current relationship." *Acumed LLC*, 561 F.3d at 213. Further, the mere offering of a bid for property does not create a contractual relationship between the seller and the buyer. *See New York Guardian Mortgage Co. v. Brokenborough*, 394 Pa. Super. 105, 108 (1990) (until the acceptance of the bid, "the bidder may retract the bid, and the auctioneer may withdraw the property"). The Amended Complaint does not plead that there is any reasonable likelihood that Plaintiff would have entered into some future contract with the County—much less, a "reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC*, 561 F.3d at 212. As such, Plaintiff has not pled the first prong of a tortious interference claim and this claim must be dismissed.

## Conclusion[9]

The Third Circuit has made clear that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245-46 (3d Cir. 2008) ("[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time"). However, no further opportunity for amendment is necessary here. The various claims dismissed herein are not dismissed for want of factual support; instead, the claims are dismissed

---

[9] Notably, Defendant also contends that the claims against the three individual Commissioner-Defendants, Battaglia, Bower, and Fink should be dismissed because the Complaint contains nothing other than naked assertions and conclusory statements that the individual Defendants, knew of, allowed, or participated in the allegedly unlawful conduct at issue here. Defendant's point is noted, but in light of Plaintiff's *pro se* status (Oxford or not), the Court concludes that sufficient factual allegations have been pled against the individual Commissioner-Defendants, though just barely. Plaintiff, of course, is now tasked with coming forward with some actual evidentiary support for his allegations of wrongdoing.

20

because the detailed factual support provided by Plaintiff (after he has already amended once) simply does not raise a viable cause of action in federal court. In light of the nature of the dismissals in this Opinion, the Court concludes that it would be both inequitable and futile to allow Plaintiff leave to further amend his Complaint.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: July 8, 2016