# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MEL MARINKOVIC,       )
                    )
           **Plaintiff,**    )     **Case No. 1:14-cv-49 and**
     **v.**               )     **Case No. 2:18-cv-388**
                    )
DAVID K. BATTAGLIA, et al.,    )
                    )
        **Defendants.**   )

## MEMORANDUM OPINION

In these consolidated civil actions, *pro se* Plaintiff Mel Marinkovic[1] sued several former Armstrong County officials in connection with his attempts to purchase county-held properties through a private bidding process. Pending before the Court in Civil Action 1:14-cv-49 is the Defendants' motion for summary judgment and Plaintiff's counter-motions to reopen discovery and to strike Defendants' exhibits. Pending in Civil Action No. 2:18-cv-388 is Defendants' motion to dismiss Plaintiff's claims, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).

For the reasons that follow, Defendants' motion for summary judgment will be granted, and Plaintiff's motions to reopen discovery and to strike exhibits will be denied. Further, the claims in Civil Action No. 2:18-cv-388 will be dismissed without leave to amend.

---

[1] Plaintiff is a frequent litigator in the Western District of Pennsylvania and elsewhere, having filed over 70 lawsuits in other judicial districts as well as vexatious litigation in this judicial district. *See Marin v. La Paloma Healthcare Ctr.*, No. 1:11CV230, 2014 WL 4828713, at *1 n.1 (W.D. Pa. Sept. 29, 2014), *aff'd*, 636 F. App'x 586 (3d Cir. 2016) (discussing Plaintiff's litigation history).

# I.    INTRODUCTION

Between 2011 to 2013 Plaintiff made inquiries to the Armstrong County Treasurer's Office about the process for buying county-held residential properties through means other than public auctions. Plaintiff claims he was informed about a direct, confidential private bid process and, thereafter, he visited and inspected dozens of properties and eventually made offers to buy several properties. He alleges that, despite being told by the Tax Claim Bureau staff that there were no competing bids on these properties, his efforts to acquire them were stymied in each case because of other buyers stepping forward at the last minute to outbid him. According to Plaintiff, this occurred because the County Tax Claim Bureau staff informed other government officials of Plaintiff's offers so that these insiders could then secretly make higher bids. Eventually, Plaintiff wrote a letter to the Armstrong County Commissioners complaining of this process, but the process allegedly continued until the County Commissioners decided to end the private sale process entirely.

Plaintiff initially brought a litany of constitutional and state-law claims against Armstrong County and three of its former Commissioners: David K. Battaglia, Robert T. Bower, and Richard L. Fink (at times hereafter, the "Defendant Commissioners"). ECF No. 31. By Memorandum Opinion and Order dated July 8, 2016, the Court dismissed all claims against the County and all but two claims against the Defendant Commissioners. As a result, the only remaining claims are: (a) a First Amendment claim predicated on the theory that Defendants unlawfully retaliated against Plaintiff by cancelling his outstanding bids on certain properties in response to his constitutionally-protected petitioning activity; and (b) a "class of one" equal protection claim premised upon an allegation that Plaintiff was the only individual bidding on

properties held by the Tax Claim Bureau who was not permitted to see the amount of other buyers' bids.

The pleadings closed on September 23, 2016, and discovery then proceeded through April 12, 2018. On September 17, 2018, the undersigned became the presiding district judge in these cases.

On January 11, 2019, Defendants filed their motion for summary judgment relative to the two remaining claims in Civil Action No. 1:14-cv-49. ECF No. 165. Defendants' motion was accompanied by a Concise Statement of Material Facts in support of their motion, ECF No. 167, as well as a memorandum of law, ECF No. 166, and an appendix of exhibits, ECF No. 168.

On April 1, 2019, after receiving a six-week extension of time for responding to the Defendants' motion, Plaintiff filed his "Opposition to Motion for Summary Judgment and Motion to Strike Defendants' Exhibits," ECF No.171, along with a "Motion to Reopen Discovery and Motion to File Rule 56(f) Affidavit under Seal," ECF No. 172. Appended to the former document was a "Statement of Material Facts in Opposition to Summary Judgment," ECF No. 171-1, which is in the nature of a declaration by Plaintiff. Despite this Court having expressly advised Plaintiff that his filings must comply with Federal Rule of Civil Procedure 56 and the local rules of this Court, Plaintiff's oppositional papers fail to do so. In particular, Plaintiff did not adhere to Local Rule 56's requirement that he submit:

> A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:
>
>> a. admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;
>>
>> b. setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with

appropriate reference to the record (See LCvR 56.B.1 for
instructions regarding format and annotation); and

c. setting forth in separately numbered paragraphs any other
material facts that are allegedly at issue, and/or that the opposing
party asserts are necessary for the Court to determine the motion
for summary judgment;

LCvR 56(C)(1). As a result, any alleged material facts set forth in Defendants' Concise

Statement of Material Facts, which are claimed to be undisputed, will be deemed admitted for

purposes of this memorandum opinion, except to the extent they are specifically denied or

otherwise competently controverted by Plaintiff's non-conforming Statement of Material Facts.

LCvR 65(E).[2]

## II.    FACTUAL BACKGROUND

Between 2013 and 2014, Plaintiff submitted bids to the Armstrong County Tax Claim

Bureau relative to five properties that the Bureau was holding in its repository. Def.s' Concise

Statement of Material Facts ("DCSMF"), ECF No. 167, at ¶1. All bids submitted to the Tax

Claim Bureau were subject to the review and approval of the County Tax Assessor. *Id.* ¶2. A

minimum bid of $400.00 was required. *Id.* ¶3. Pursuant to Pennsylvania law, upon receipt of a

bid, the Tax Claim Bureau was obligated to seek the consent of the local taxing bodies to the sale

of the property to that bidder. *Id.* ¶32 (citing 72 Pa. Stat. §5860.627). Accordingly, before it

accepted an offer on any property, the Tax Claim Bureau provided notice of the bid to the local

taxing entities. *Id.* ¶33. The amount of the bid was not disclosed. *Id.* Instead, the Tax Claim

Bureau advised the local taxing authorities only of the fact of a bid and the identity of the

purchaser. *Id.* ¶34. The Tax Claim Bureau also did not disclose the amount of any bids,

---

[2] For the reasons discussed in more detail, *infra,* Plaintiff's motion to reopen discovery will be
denied.

including the amounts of Plaintiff's bids, to other buyers. *Id.* ¶35. As Armstrong County Commissioners, the Defendants' only involvement in the sale of properties held in the Tax Claim Bureau repository was to provide final approval of the sale following the County Assessor's acceptance of an offer. *Id.* ¶31.

On April 24, 2013, Plaintiff submitted a private bid for the "Borland" property, control number 18-0-010292, in the minimum amount of $400.00 DCSMF ¶4. The County Assessor rejected Plaintiff's offer on the "Borland" property because a higher bid was submitted by another person. *Id.* ¶5. The Tax Claim Bureau advised Plaintiff that the Assessor had rejected his bid by correspondence dated June 11, 2013. *Id.* ¶6.

On August 6, 2013, Plaintiff submitted a bid for the minimum amount of $400.00 on the "Metro Housing, LLC" property, control number 01-0-000160. DCSMF ¶7. The County Tax Assessor rejected Plaintiff's bid on October 4, 2013, due to the fact that the Assessor had received a higher offer of $1,500.00 on August 22, 2013. *Id.* ¶¶8-9. Defendants Bowers and Fink, acting as County Commissioners, approved the sale of the Metro Housing, LLC property to the higher bidder. *Id.* ¶10.

On November 19, 2013, Plaintiff submitted a minimum bid of $400.00 and up to $1,000.00 on the "Imagine America, LLC" property, control number 14-0-007328. DCSMF ¶11. The Assessor noted that this property was worth $1,000.00. *Id.* ¶12.

That same day, Plaintiff submitted a minimum bid of $400.00 and up to $1,000.00 on the "Bell" property, control number 14-0-007591. DCSMF ¶19. Another individual, Michael Zaffuto, submitted a competing bid for that same property on December 13, 2013 in the amount of $2,000.00. *Id.* ¶20.

On December 23, 2013, Plaintiff served Defendants with a copy of a draft complaint against the County and correspondence advising that Plaintiff perceived his civil rights had been violated in connection with his submissions of bids to the Tax Claim Bureau. DCSMF ¶24. Defendants acknowledge receipt of these documents on or around that same date. *Id.* ¶25.

On January 17, 2014, the County Tax Assessor rejected Plaintiff's bid relative to the Bell property and accepted the higher offer of Michael Zaffuto. DCSMF ¶21. All three Defendant Commissioners later approved the sale of the "Bell" property to Zaffuto. *Id.* ¶22. Via correspondence dated January 21, 2014, Plaintiff was informed of the fact that the County had accepted a higher bid on the property in lieu of his own. *Id.* ¶23.

With the approval of the Tax Claim Bureau's Director, and upon the recommendation of the county solicitor, the "Imagine America, LLC" property was awarded to Plaintiff on January 22, 2014, per his bid of $1,000.00. DCSMF ¶15. The County Board of Commissioners, through Defendants Bower and Fink, approved the sale of the "Imagine America, LLC" property, to Plaintiff. *Id.* ¶16. Plaintiff was informed of the Board's approval of his bid via correspondence dated February 5, 2014, and the sale was later consummated on or about July 19, 2014. *Id.* ¶¶17-18.

Meanwhile, on January 17, 2014, Plaintiff had submitted a bid on the "Hartzell" property, control number 10-0-065394 for a minimum bid of $400.00 and up to $1,000.00. DCSMF ¶26. The County Tax Assessor accepted the bid of $1,000.00 on February 4, 2014. *Id.* ¶27. The Defendant Commissioners approved the sale of the "Hartzell" property to Plaintiff, and Plaintiff was so notified by correspondence dated February 19, 2014. *Id.* ¶¶28-29. Plaintiff later advised the Tax Claim Bureau that he would not be buying the "Hartzell" property. *Id.* ¶30.

At some point in early 2014, the Tax Claim Bureau implemented a new procedure of holding public auctions, rather than private paper bids, for the sale of properties held in the repository. Defendants contend that this occurred in February 2014 and that the first public auction was held on February 20, 2014. DCSMF ¶13. Plaintiff claims that, "[i]n the 3rd week of January 2014" he was told by a member of the Tax Claim Bureau staff that the private bidding process was being terminated as of the close of business that same day. ECF No. 171-1, ¶5.

## III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 165]

### A.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In analyzing a motion under Rule 56, the Court must construe the evidence and all reasonable inference arising therefrom in the light most favorable to the non-movant. *Scott v. Harris,* 550 U.S. 372, 378 (2007).

### B.    Plaintiff's Motion to Strike Defendants' Exhibits [ECF No.171]

Initially, the Court will address Plaintiff's challenges to Defendants' exhibits.[3] *See* ECF No. 171. Plaintiff asserts that the exhibits were filed in violation of the local rules of this Court

---

[3] Though Plaintiff moves to "strike" the challenged exhibits, that form of relief is inopposite for summary judgment purposes. Federal Rule of Civil Procedure 12(f) permits the court, in its discretion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because the exhibits in question are not "pleadings," they are not subject to Rule 12(f). *See Polite v. Dougherty Cnty. Sch. Sys.,* 314 F. App'x 180, 184 n.7 (11th Cir. 2008) (finding no error in the district court's denial of a motion to strike an affidavit because "motions to strike are only appropriately addressed towards matters contained in the pleadings; here, the affidavit was submitted as part of the motion for summary

and in violation of an order entered by Chief U.S. District Judge Mark R. Hornak, who previously presided over this litigation. Plaintiff also argues that Defendants' exhibits have not been properly authenticated. Positing that the Defendants' exhibits are thus "useless," Plaintiff reasons that the Defendants' Concise Statement of Material Facts – which relies on those same exhibits – is likewise "useless." ECF No. 171 at 4. These objections lack merit and will be overruled.

Plaintiff's first argument is that Defendants were precluded, under the local rules of this Court, from filing discovery answers in support of their Rule 56 motion. This line of argument confuses the general rule against filing discovery materials, as set forth in Federal Rule of Civil Procedure 5(d)(1) and Local Civil Rule 5.4, with the use of such materials in support of a summary judgment motion, as contemplated by Federal Rule 56 and Local Rule 56. As a general proposition, litigants are not permitted to file discovery requests and responses with the Court, except as necessary to decide a motion or as otherwise ordered by the Court. *See* Fed. R. Civ. P. 5(d); LCvR 5.4(A)-(B). Consistent with this rule, Judge Hornak previously denied Plaintiff's request to file discovery materials when the stated purpose was merely to demonstrate service of same upon the Defendants. ECF No. 111 at 10-11; ECF No. 112. By contrast, both Federal Rule 56 and Local Rule 56, expressly contemplate – and even require -- parties to file discovery-related materials in support of, or in opposition to, a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A); LCvR 56(B)(1) & (3); LCvR 56(C)(1) & (3). Defendants therefore did not violate any rule or order of this Court in submitting the exhibits that are

---

judgment, which is not a pleading"); *Bradfield v. Easterling*, No. 12-1248, 2016 WL 1242593, at *1 n.1 (W.D. Tenn. Mar. 29, 2016) ("While Federal Rule of Civil Procedure 12(f) authorizes a motion to strike a "pleading" for various reasons, motions and affidavits are not pleadings.") (citing Fed. R. Civ. P. 7(a)). The Court will instead construe Plaintiff's motion as an objection under Rule 56(c)(2).

included in their appendix. Moreover, Defendants did not need permission from this Court prior to filing their exhibits, nor did they need Plaintiff's permission, as he seems to suggest. Plaintiff's contention that the Defendants somehow violated his privacy rights by including his discovery responses in their appendix is facially bogus.

Plaintiff's next argument is that Defendants' exhibits are inadmissible because they were not properly authenticated. Under the Federal Rules of Evidence, the proponent of an exhibit "has an 'incredibly slight' burden" relative to authentication, "which may be satisfied by simply producing evidence sufficient to support a finding that the item is what the proponent claims it is." *Heyman v. Citimortgage, Inc.*, No. 14-1680-KM-MAH, 2019 WL 2642655, at *16 (D.N.J. June 27, 2019) (quoting *Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 330 (3d Cir. 2014) (citing Fed. R. Evid. 901(a))). This showing "may be accomplished by the testimony of a witness with knowledge." *Cordance Corp. v. Amazon.com, Inc.*, 639 F. Supp. 2d 406, 432 (D. Del. 2009).

Though it is not entirely clear, Plaintiff appears to be primarily challenging certain records from the Tax Claim Bureau that were appended to the declaration of Rebecca Snyder. *See* ECF No. 168 at 6-33. In her declaration, Ms. Snyder attests that:

- she is the current Director of the Armstrong County Tax Claims Bureau (¶1);

- prior to January 18, 2011, she held the position of Supervisor within the Tax Claims Bureau (*id.*);

- in her capacity as Director of the Tax Claim Bureau, she handles the sale and disposition of county properties held in the Tax Claim Bureau's repository (*id.* ¶2);

- she was involved in the review and processing of Plaintiff's bids on repository properties in 2013 and 2014 (*id.*);

- the information in her declaration is based upon her personal recollection of her contacts with Plaintiff as well as the records maintained by the Bureau (*id.* ¶3);

• the records attached to her declaration are "[t]rue and correct copies of all pertinent Tax Claim Bureau records," and she personally "attest[s] to the authenticity of the same." (*Id.*)

Based on these averments, the records and exhibits appended to the declaration of Rebecca Snyder are properly authenticated.

Defendants' remaining exhibits consist of: (a) written discovery that was served or answered by the parties, (b) Plaintiff's December 23, 2013 correspondence to the Defendants, and (c) Plaintiff's draft complaint that was enclosed with the December 23, 2013 correspondence. ECF No. 168. Plaintiff's answers to discovery, his December 23, 2013 correspondence, and his accompanying draft complaint, are all admissible as admissions of a party opponent. Fed. R. Evid. 802(d)(2). And any relevant evidence that may be set forth in the Defendants' responses to written discovery could be presented at a trial through witness testimony. Thus, all of the evidence in Defendants' exhibits is capable of being presented at trial in an admissible form. Plaintiffs' objection to the Court's consideration of this evidence is therefore overruled. *See Heyman,* 2019 WL 2642655, at \*17 ("[W]hen evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence.").

### C. Plaintiff's Motion to Reopen the Record and Request to File a Rule 56 Affidavit Under Seal [ECF No. 172]

Next, the Court considers Plaintiff's motion to reopen the record, which he claims is necessary so that he can "fairly address the defendants' arguments about individual properties." ECF No. 171 at 2. Relatedly, Plaintiff requests leave to file a Rule 56(d) affidavit[4] under seal.

---

[4] Although Plaintiff actually refers to a "Rule 56(f) affidavit," the Rule has since been amended and the relevant provision is now found under subsection (d).

Under the law of this circuit, district courts are "obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (internal quotation marks and citation omitted). "This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record." *Id.* (citations omitted). To that end, Federal Rule of Civil Procedure 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." In this way, the rule "provides for the just adjudication of disputes by ensuring that parties are not 'railroaded by a premature motion for summary judgment.'" *Pre-Settlement Fin., LLC v. Ellis*, No. CV 18-6339-KM-CLW, 2019 WL 3543999, at *6 (D.N.J. Aug. 2, 2019) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986)).

A party seeking relief under Rule 56(d) must generally submit an affidavit explaining what discovery is sought, how it would preclude summary judgment, and why it was not previously obtained. *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015). "District courts usually grant properly filed Rule 56(f) motions as a matter of course," especially "when there are discovery requests outstanding or relevant facts are under the control of the moving party." *Doe,* 480 F.3d at 257 (internal quotation marks and citations omitted). On the other hand, "the rule is not intended to protect those who have had an opportunity to complete discovery, but who failed to do so by their own lack of diligence." *Banks v. City of Phila.,* 309 F.R.D. 287, 292 (E.D. Pa. 2015); *see In re Asbestos Prods. Liab. Litig.* (No. VI), No. 09–69125, 2011 WL 1539883, at *2 (E.D. Pa. Feb. 22, 2011) (noting that Rule 56(d) motions may be denied where the movant "had

ample time and opportunity to conduct discovery, but failed to do so") (internal quotation marks and citation omitted).

In this case, Plaintiff has not demonstrated grounds for a discovery continuance under Rule 56(d). To begin, Plaintiff has failed even to identify what specific information he seeks to obtain or how it would preclude an entry of summary judgment in the Defendants' favor. Instead, Plaintiff states only that he needs to "investigate" the Defendants' exhibits and that he needs to file his Rule 56(d) affidavit under seal, because the affidavit would reveal litigation strategies and privileged work product. Thus, it appears that Plaintiff is essentially seeking an *in camera* review of an *ex parte* Rule 56(d) affidavit. Plaintiff cites no pertinent authority for proceeding in this fashion, and the Court declines to do so.

Furthermore, Plaintiff has failed to articulate any cogent reason as to why he was previously unable to obtain the information he now seeks. This is not a case in which the defense has moved prematurely for a grant of summary judgment, prior to full development of the evidentiary record. On the contrary: as of April 1, 2019, when Plaintiff filed his Rule 56(d) motion, ECF No. 172, this civil action had been pending for more than five years. Discovery opened in February 2017 and was initially scheduled to close on August 1, 2017. *See* ECF No. 64. As a result of robust discovery-related motions practice, however, and an unauthorized interlocutory appeal (taken by Plaintiff), the exchange of discovery continued until at least April of 2018. *See, e.g.,* ECF Nos. 66, 80, 84, 108, 125, 127, 129, 135, 141, 144, 145. Notably, Plaintiff does not contend that the Defendants' exhibits constitute newly acquired evidence; indeed, he acknowledges that he likely received them in March 2017. *See* ECF No. 172 at 3.

Plaintiff's only explanation for his belated discovery request is that Judge Hornak supposedly mismanaged the discovery process and deprived him of an opportunity to obtain the

information he now seeks. According to Plaintiff, Judge Hornak, through an inadvertent "oversight," denied Plaintiff the right to obtain discovery relative to Defendants' exhibits. ECF No. 172 at 2. Plaintiff claims that he "did not move previously to correct that oversight before Judge Hornak because the judge ruled one of plaintiff's actions was for purposes of delay, and plaintiff sought to avoid more of those findings because several of the[m] can cause dismissal and base a sanctions order [sic] and plaintiff is IFP and has no ability to pay attorneys's [sic] fees for the opposing party." *Id.* Plaintiff further claims that, when the undersigned "asked in the most recent hearing if the parties were waiting for more discovery . . . , plaintiff answered no, because Judge Hornak ended it so plaintiff has no right to continue discovery." *Id.*

In this Court's view, the record does not plausibly support Plaintiff's assertion that he was previously "denied" the relevant discovery he now seeks to obtain. The docket reflects that, in March of 2017, Plaintiff filed a motion to compel Defendants to produce, *inter alia,* certain information related to the private bidding process and/or the bids of other potential property buyers. ECF Nos. 80, 81. Defendants took the position that: they had produced all the information within their possession from the time they held office as County Commissioners, they were not in possession of any discoverable information beyond what they had produced, and, to the extent additional discoverable information was within the possession of Armstrong County or the Tax Claim Bureau, Plaintiff was able to independently access such information himself. ECF Nos. 86; ECF No. 81-2. Following a telephonic conference, Judge Hornak denied Plaintiff's motion to compel without prejudice, presumably on the theory that Plaintiff could pursue the information directly from the relevant third parties. Regardless of his motive, however, it was not incumbent upon Judge Hornak to manage the filing of Plaintiff's discovery motions. Because discovery is driven by the litigants in the first instance, it was incumbent upon

13

Plaintiff to diligently pursue any information he felt was relevant to his claims – including information held by third parties, and seek intervention from the Court as necessary. Plaintiff's assertion that he could not seek additional discovery because he feared being charged with delay, or being sanctioned, strains credulity. As Defendants accurately observe, throughout the course of this protracted litigation, Plaintiff has not hesitated to file motions that had the potential to delay the proceedings. Finally, Plaintiff could have raised any good-faith concerns he had regarding discovery when the undersigned became the presiding district judge approximately one year ago.

In sum, Plaintiff has failed to demonstrate any basis under Rule 56(d) for granting a continuance and reopening the record in this case. *See Williams v. Market,* Civ. No. 14-3098, 2016 WL 1558584, at *3 (D.N.J. April 18, 2016) ("Williams' vague and general statements that she 'cannot ... present facts essential to justify [her] opposition' and that 'there are genuine issues as to material facts' fail to fulfill the specificity required by Rule 56(d)) (citing *Hancock Indus. v. Schaeffer,* 811 F.2d 225, 230 (3d Cir. 1987)). Accordingly, the Motion to Reopen Discovery and Request to File [a] Rule 56[d] Affidavit Under Seal will be denied.


*D. Analysis of Defendants' Motion for Summary Judgment* [ECF No. 165]

Plaintiff's claims are brought under 42 U.S.C. §1983, which "is not itself a source of substantive rights," but provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). To prevail under § 1983, a plaintiff must prove that he suffered the deprivation of a right secured by the United States Constitution or federal law by a person acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, the plaintiff must demonstrate each defendant's personal

involvement in the alleged wrongdoing, because §1983 liability cannot be predicated on principles of *respondeat superior*. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

In this case, it is not disputed that the named Defendants were acting under color of state law at all relevant times. Therefore, the question becomes whether Plaintiff has produced sufficient evidence that Defendants violated his federal rights. In this regard, Plaintiff has alleged two violations. First, he claims that his First Amendment rights were violated when Defendants retaliated against him for engaging in constitutionally protected petitioning activity by "cancelling" his bids on certain properties. Second, Plaintiff claims that Defendants violated his Fourteenth Amendment right to equal protection of the laws when they allowed other persons bidding on Tax Claim Bureau properties to see his confidential bids while prohibiting him from seeing theirs. Based upon the uncontroverted evidence of record, neither theory has merit.

### 1. Plaintiff's First Amendment Retaliation Claim

The First Amendment protects not only the right to petition the government for redress, but also the right to be from retaliation resulting from such petitioning. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'"). To establish a First Amendment retaliation claim based upon the Petition Clause, a plaintiff must prove (1) that the First Amendment protected the activity in question, (2) that a government agent responded with a retaliatory action, and (3) that the protected activity was a substantial factor in the retaliation. *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). If a plaintiff establishes these prima facie elements, the defendant can still avoid liability by demonstrating, by a preponderance of the

evidence, that the same action would have been taken even in the absence of the protected conduct.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Here, there is no dispute that the first element is met.  Defendants do not contest that Plaintiff engaged in constitutionally protected petitioning activity when he sent correspondence to Defendants on or about December 23, 2013, advising them of potential civil rights litigation and enclosing a draft complaint.  What is lacking, however, is evidence that could support the existence of elements two and three.

With regard to element two, the alleged retaliatory conduct must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."  *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks and citation omitted).  Defendants do not contest the proposition that the arbitrary cancellation or rejection of a bid on government-held property could constitute sufficiently adverse action.

Nevertheless, Defendants maintain that Plaintiff has not shown that they were personally involved in such conduct.  This argument is well-taken.  Here, the record is devoid of evidence showing that any of the named Defendants were involved in "cancelling" a bid that Plaintiff made on property held in the Tax Claim Bureau repository.  Instead, the evidence shows that it was the County Tax Assessor, in the first instance, who made the decision whether to accept or reject a particular bid.  As County Commissioners, the Defendants' only involvement was to provide final approval of a sale *after* the Chief Assessor accepted an offer.  Plaintiff has failed to proffer any evidence indicating the Defendants' awareness of his bids, other than the two bids Plaintiff made relative to the Imagine America and Hartzell properties.  As to these two parcels, it is undisputed that Defendants *approved* Plaintiffs' bid to acquire them, although Plaintiff ultimately declined to purchase the Hartzell property.  Nothing in the record supports the

conclusion that Defendants knew about Plaintiff's other three bids on the Borland, Metro Housing, and Bell Properties. On the contrary: the undisputed evidence establishes that those bids were rejected by the County Assessor and therefore never came before the Defendants for consideration. Thus, Plaintiff cannot satisfy the second element of his retaliation claim.

Plaintiff also cannot establish the third element of his retaliation claim, because there is no evidence to suggest a causal link between Plaintiff's protected activity and the rejection of his bids. Under the law of this circuit, a plaintiff can rely on circumstantial evidence to support an inference that a defendant's acts were inspired by a retaliatory motive. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Such indirect evidence may consist of either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* Where the timing alone is not "unusually suggestive" of retaliatory motive, the plaintiff must set forth other evidence to establish a causal link. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

Here, the record indicates that Defendants became aware of Plaintiff's protected activity on or around December 23, 2013. Of the five bids in question, only *one* – relative to the Bell property -- was rejected by the Tax Assessor *after* that date. The record reflects that the Assessor made his decision on January 17, 2014, just twenty-five (25) days after Plaintiff petitioned the Defendants. Notably, however, *two* of the five bids at issue in this case – the bids on the Imagine America and Hartzell properties -- were *accepted* during this same general time frame. *See* DCSMF ¶37.[5] Plaintiff was informed of the Defendants' approval of his bid relative to the

---

[5] The remaining two bids – relative to the Borland and Metro Housing Properties – were rejected by the County Assessor prior to the date of Plaintiff's protected activity and are therefore immaterial to the Court's analysis of potential retaliation.

Imagine America property by letter dated February 5, 2014 – just six weeks after the date of his protected activity. DCSMF ¶17. Plaintiff was informed of the Defendants' approval of his bid relative to the Hartzell property by correspondence dated February 19, 2014 – some eight weeks after Plaintiff's protected petitioning activity. Thus, the timing and results of the bidding process do not support an inference of purposeful retaliation. Any such inference is all the more untenable given the fact that another individual outbid Plaintiff on the Bell Property (and that higher bid had been received prior to December 23, 2013). *See* DCSMF ¶38. Therefore, a legitimate, non-retaliatory basis existed for the rejection of Plaintiff's bid.[6] And, as noted, there is no evidence to suggest that the Defendants were even aware of Plaintiff's bid on the Bell Property, as that bid was never submitted to them for approval.

Plaintiff's "Opposition to Motion for Summary Judgment" and "Statement of Material Facts" fail to establish the existence of any genuinely disputed material fact. *See* ECF Nos. 171 and 171-1. In his opposition brief, Plaintiff argues a second theory of retaliation at length: namely, that the Defendants cancelled the private tax sale bidding process altogether in retaliation for Plaintiff's complaints about that process. However, this particular claim was dismissed at the Rule 12(b)(6) stage on the basis of legislative immunity, *see* ECF No. 47 at 5-6, ECF No. 48, and Plaintiff's attempts to revive that theory at this juncture are therefore unavailing.

Plaintiff's "Statement of Material Facts in Opposition to Summary Judgment" is in the nature of a sworn declaration. The contents of the declaration relate primarily to Plaintiff's retaliation claim predicated upon the Defendants' cancellation of the private bidding program

---

[6] Based on this uncontroverted fact, Defendants have also established, as a matter of law, that the same adverse action – the rejection of Plaintiff's bid on the Bell Property – would have occurred even in the absence of Plaintiff's protected activity.

which, as discussed, is no longer a part of this litigation. Moreover, to the extent the declaration contains any pertinent information regarding the Defendants, it is materially dependent upon inadmissible hearsay statements from Rebecca Snyder, which cannot be considered at the Rule 56 stage. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Agrizap, Inc. v. Woodstream Corp.*, 450 F. Supp. 2d 562, 567 (E.D. Pa. 2006) ("Evidence submitted with a motion for summary judgment must be reducible to admissible evidence at trial.") (citing *Williams v. Borough of West Chester*, 891 F. 2d 458, 465 n.12 (3d Cir. 1989)).

Plaintiff's declaration otherwise attempts simply to incorporate by reference all of the allegations in his complaints. *See* ECF No. 171-1 at 1 (Plaintiff declaring "under penalty of perjury that the facts in my First Amended Complaint, and in the subsequently submitted complaint . . . are true and correct based on my personal involvement."). At the Rule 56 stage, "[u]nsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *Heyman v. Citimortgage, Inc.*, Civ. No. 14-1680-KM-MAH, 2019 WL 2642655, at *15 (D.N.J. June 27, 2019) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."))

For all of the foregoing reasons, Plaintiff has failed to adduce evidence that would show the existence of a genuinely disputed issue of fact relative to the second and third elements of his retaliation claim. In light of these deficiencies, Plaintiff's First Amendment retaliation claim cannot withstand summary judgment.

## 2. Plaintiff's Equal Protection "Class of One" Claim

Plaintiff's second theory under §1983 is that Defendants violated his right to equal protection under the law by essentially treating him as a "class of one." To prevail under this theory, Plaintiff must show that he was intentionally treated differently from other similarly situated individuals and that no rational basis existed for the disparate treatment. *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

In this case, Plaintiff bases his equal protection claim on the theory that his private bids were disclosed to other competitors, while the competitors' bids were not shared with him. Plaintiff, however, has failed to identify evidence in support of this allegation, as is required at the Rule 56 stage. *Wiest v. Tyco Elec. Corp.*, 812 F.3d 319, 330 (3d Cir. 2016) ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party who must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.") (internal quotation marks and citation omitted); *Young v. Twp. of Coolbaugh*, 276 F. App'x 206, 209 (3d Cir. 2008) (plaintiff's equal protection "class of one" claim could not survive summary judgment where plaintiff failed to produce evidence of similarly situated proposals that were treated differently from his own land development proposal).

Instead, the undisputed evidence shows that no intentional disparate treatment occurred in terms of shared bidding information. As discussed, the Armstrong County Tax Claim Bureau is obligated, under Pennsylvania law, to seek the local taxing body's consent to the sale of a property held in the Bureau's repository. DCSMF ¶32. *See* 72 Pa. Stat. Ann. §5860.627.

Consistent with this law, the Tax Claim Bureau, prior to accepting a bid, provided notice of same to the local taxing body. Only the fact of the bid and the identity of the bidder were disclosed. DCSMF ¶¶33-34. As set forth in the declaration of Rebecca Snyder, the Bureau did not disclose the amount of any bids, including the amounts of Plaintiff's bids, to any other potential buyers. Snyder Decl. ¶18, ECF No. 168-1 at 9. Further, as Defendants point out, the amount of the bids themselves belie any suggestion that disclosure occurred. Specifically, Plaintiff's losing bid on the Borland Property was the minimum of $400.00, whereas the winning bid was $1,000.00; Plaintiff's losing bid on the Metro Housing, LLC Property was $400.00, while the winning bid was $1,500.00; and Plaintiff's losing bid on the Bell Property was $1,000.00, while the winning bid was $2,000.00. *See* DCSMF ¶¶4, 7, 9, 11, 19-20. In each case, Plaintiff lost to a bidder who offered at least twice as much as Plaintiff did for the property in question. One might expect that, if deliberate bid-rigging were occurring, Plaintiff's competitors would have known that they could secure the subject properties with much lower offers that just barely exceeded Plaintiff's bids.

Even assuming, however, that Plaintiff could produce evidence of discriminatory treatment in the bidding process, he has not shown Defendants' personal involvement therein. As previously discussed, the Defendants' only role in the sale of properties held in the Tax Claim Bureau repository was to provide final approval of each sale following the County Tax Assessor's acceptance of an offer. DCSMF ¶31. No evidence exists to suggest that the Defendants were even aware of Plaintiff's bids, aside from the two bids that were accepted by the Assessor and approved by the Defendants.

Plaintiff's arguments in opposition to summary judgment fall far short of identifying the existence of a genuine issue of material fact. To demonstrate that he was "punished," and

thereby treated in a disparate fashion, Plaintiff cites to Paragraph 34 of his Amended Complaint, which alleges four acts of retaliation by the Defendants. ECF No. 25-1, ¶34. It is axiomatic, however, that Plaintiff cannot withstand summary judgment merely by relying on the assertions in his pleading. *Wiest*, 812 F.3d at 330. Moreover, Judge Hornak previously found three of the four acts of retaliation to be non-actionable, and he dismissed those claims at the Rule 12(b)(6) stage. *See* ECF No. 47 at 4-6 and ECF No. 48 (dismissing First Amendment retaliation claims predicated upon Defendants' alleged involvement in (a) directing the Director of the Tax Claims Bureau not to talk with Plaintiff, (b) instructing the Director not to return Plaintiff's phone calls, and (c) cancelling the private paper bid program in favor of a public auction system). As for the fourth alleged act of retaliation – *i.e.,* cancelling Plaintiff's bids on certain properties – there is no evidence from which a jury could reasonably conclude that Plaintiff was treated differently from other bidders, nor is there evidence to suggest that the rejection of his bids on the "Borland," "Metro Housing, LLC" or "Bell" properties was driven by an unlawful discriminatory or retaliatory motive.

Plaintiff next points to Paragraph 17 of Rebecca Snyder's declaration, which he interprets as proof that he was treated differently from others: *i.e,* "he was the only one not allowed to know when others bid on specific property addresses." ECF No. 171 at 18. But the cited portion of Ms. Snyder's declaration merely states: "It is the policy of the [Tax Claim] Bureau only to advise the local taxing authorities of the fact of a bid in order to obtain their approval for a sale as required under Act 69. The Bureau only reveals the identity of the purchaser, but not the amount of the bid." ECF No. 168-1 at 9, ¶17. Nothing in this statement suggests that the Tax Claim Bureau, or (more relevantly) the Defendants, gave out information about Plaintiff's bids to other prospective purchasers. Thus, Plaintiff's theory rests solely on speculation.

In sum, Plaintiff has not demonstrated the existence of a genuinely disputed issue of fact in support of his theory that the Defendants intentionally treated him differently from other similarly situated bidders. Accordingly, his equal protection claim cannot survive summary judgment.

## IV.    DEFENDANTS' MOTION TO DISMISS [ECF No. 162]

Finally, the Court will address the Defendants' motion to dismiss the complaint in Civil Action No. 2:18-cv-388. The Defendants in this related action are Battaglia, Bower, Fink, "County Counsel," former Tax Claim Director Jeanne Englert, and Armstrong County. *See Marinkovic v. Battaglia, et al.,* No. 2:18-cv-388 (ECF No. 1-1). The complaint sets forth two causes of action predicated on the Defendants' alleged spoliation of evidence and "deliberate indifference" to the violation of Plaintiff's federal civil rights. The claims arise out of Plaintiff's grievances relative to discovery that was conducted in Civil Action No. 1:14-cv-49.

Defendants move to dismiss the complaint for failure to effectuate proper service and failure to state a claim upon which relief can be granted. *See* ECF Nos. 157 and 158. Plaintiff filed his reply in opposition, ECF No. 162, and the issues have therefore been properly joined for purposes of adjudication. Because the Court finds that Plaintiff has not stated a cognizable legal claim in his pleading, the Court need not reach the Defendants' arguments concerning improper service.

Federal Rule of Civil Procedure 12(b)(6) recognizes a defense based upon the Plaintiff's failure to state a claim upon which relief can be granted. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the court must accept all well-pleaded facts as true for purposes of a Rule 12(b)(6) motion, it may disregard conclusory allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

In conducting its analysis, the court may consider the allegations in the complaint, matters of public record, and undisputedly authentic documents upon which the plaintiff's claims are premised. *See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). Because the instant case is consolidated with, and predicated upon, the claims in Civil Action No. 1:14-cv-49, the Court's scope of review includes matters presently of record in that case. *See In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996) ("[A]mple authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss."), *reversed on other grounds by Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998); *Advanced Fluid Systems, Inc. v. Huber*, 28 F. Supp. 3d 306, 316 (M.D. Pa. 2014) ("In addition to reviewing the facts contained in the complaint, the court may also consider 'matters of public

record, orders, exhibits to the complaint and items appearing in the record of the case.'")

(quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir.1994)).

### A. Count I: Plaintiff's Claim of Alleged Spoliation

In Count I of the Complaint, Plaintiff asserts a claim of spoliation based upon the theory that the Defendants Battaglia, Bower, Fink, and Englert destroyed evidence that would have helped him prove his First Amendment retaliation claim in Civil Action No. 1:14-cv-49. Although Plaintiff does not specify precisely what records he believes were destroyed, he claims the unidentified documents would have proved the following:

- that the Defendant Commissioners received Plaintiff's December 23, 2013 correspondence and draft complaint no later than January 10, 2014;

- that Defendant Commissioners thereafter terminated the private bidding program, to be effective by the end of the day on January 17, 2014;

- that Plaintiff submitted, by fax, a timely bid on January 17, 2014 for the "only liveable" house in Ford City;[7]

- that Plaintiff's bid was the only one placed on that "preferred property"; and

---

[7] Although Plaintiff pointedly fails to identify in his Complaint what this "preferred property" is, it is evident from the record that the Complaint is referring to the Hartzell Property which, contrary to the allegations in the Complaint, is not located in Ford City. In drawing this inference, the Court notes that Plaintiff made very similar allegations in his operative complaint in Case No. 1:14-cv-49, specifically referencing the Hartzell Property as the "preferred property" in question, and omitting any reference to Ford City. *See* ECF No. 31 at ¶¶24(c), 25, 28, 34(d). Moreover, in discovery, Plaintiff confirmed that the "preferred property" he was referring to was the Hartzell Property. *See* ECF No. 168-1 at 59, ¶¶3-4; *id.* at 2, ¶¶3-4. Finally, uncontroverted evidence in the record indicates that Plaintiff submitted his bid on the Hartzell Property on January 17, 2014 – the very day Plaintiff claims that the private bidding program was scheduled to end and the same day that he claims to have timely submitted his bid on the "preferred property." *See* DCSF ¶15; ECF No. 168-1 at 30. Plaintiff's affidavit in Civil Action 1:14-cv-49 alludes to a bid that Plaintiff supposedly made on a "3rd Ave." property in Ford City, but that bid allegedly occurred at some point prior to December 23, 2013 (not on January 17, 2014). *See* ECF No. 171-1 at ¶¶1-3. To the extent Plaintiff's Complaint in 2:18-cv-388 suggests that the "preferred property" was actually a different parcel located in Ford City, the Court finds such an inference implausible.

- that, even though plaintiff's was the only bid for his preferred property, the Defendant Commissioners refused to allow him to buy that parcel and canceled his bid.

Compl. ¶¶24-32, 36.

As Defendants point out, Pennsylvania law does not recognize spoliation of evidence as an independent cause of action. *Pyeritz v. Commonwealth,* 32 A.3d 687, 692 (Pa. 2011); *see Ligato v. Wells Fargo Bank, N.A.,* No. CV 16-5683, 2018 WL 1141328, at *11 (E.D. Pa. Mar. 2, 2018) ("Defendants correctly note that Pennsylvania does not recognize an independent tort action for spoliation of evidence.") (citing *Paluch v. Sec'y Pa. Dept. Corr.,* 442 F. App'x 690, 694-95 (3d Cir. 2011) (*per curiam*)). Instead, a party aggrieved by the alleged spoliation of material evidence is relegated to seeking evidentiary sanctions in the underlying litigation. *See Pyeritz,* 32 A.3d at 692 (citing *Schroeder v. Commw.,* 710 A.2d 23, 27 (Pa. 1998) (adopting the Third Circuit's approach to sanctions for spoliation of evidence)).

Plaintiff's Complaint acknowledges that he was aware, as of March 25, 2017, of the facts giving rise to his spoliation claim. *See* Compl. ¶37. At that time, discovery was still ongoing in Civil Action 1:14-cv-49. Thus, to the extent Plaintiff had a good faith basis to accuse Battaglia, Bower, or Fink of destroying evidence, it was incumbent upon him to request evidentiary sanctions in connection with the litigation in Civil Action No. 1:14-cv-49. Similarly, to the extent Plaintiff believed that Tax Claim Director Jeanne Englert was in possession of discoverable information relative to his claims in the underlying civil rights suit, it was incumbent upon Plaintiff to diligently pursue such information – by issuance of a third-party subpoena, if necessary – and seek relief from the Court in the form of sanctions, if he believed

that records were being improperly destroyed. What he cannot do is file a new lawsuit for monetary damages based on allegations of spoliation.[8]

Plaintiff's various arguments in opposition to the dismissal of Count I are unpersuasive. Initially, Plaintiff argues that the Defendants failed to timely answer the complaint and are now in default, which precludes this Court from addressing the merits of their Rule 12(b)(6) motion. Plaintiff is mistaken. On March 23, 2018, two days after Plaintiff lodged this Complaint, Judge Hornak granted his motion for leave to proceed *in forma pauperis,* but expressly stated that the Defendants' obligations to file a Rule 12 response to the Complaint were held in abeyance

---

[8] Even if this Court were to construe Plaintiff's complaint as a motion for spoliation sanctions relative to underlying litigation in Case 1:14-cv-49, the motion would fail. In order for spoliation to be established, it must be shown that: (1) the evidence in question was in the spoliating party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and (4) the duty to preserve the evidence was reasonably foreseeable to the spoliating party. *Bull v. United Parcel Serv., Inc.,* 665 F.3d 68, 73 (3d Cir.2012) (citation omitted). The party who seeks a spoliation sanction bears the burden of proving these factors. *Universal Underwriters Ins. Co. v. Dedicated Logistics, Inc.,* No. CIV.A. 11-1153, 2014 WL 7335668, at *4 (W.D. Pa. Dec. 19, 2014).

Here, Plaintiff's complaint alludes to certain facts that he believes he could have established through the lost evidence, Compl. ¶36, but his pleading pointedly fails to identify what documents were supposedly destroyed. "A proper spoliation claim requires the moving party to set forth evidence with specificity. In the absence of a showing that specific evidence was 'destroyed in order to prevent it from being used by the adverse party, a spoliation instruction is improper.'" *Flanders v. Dzugan,* No. CIV.A. 12-1481, 2015 WL 5022734, at *5 (W.D. Pa. Aug. 24, 2015) (quoting *U.S. v. Nelson,* 481 F. App'x 40, 42 (3d Cir. 2012)); *see also Bensel v. Allied Pilots Ass'n,* 263 F.R.D. 150, 153 (D.N.J. 2009) ("Such a catch-all statement, along with vague speculation as to whether evidence has been destroyed or even whether evidence was relevant does not rise to the specificity level required by the Third Circuit to impose sanctions or even make a finding of spoliation.").

Moreover, none of the facts that Plaintiff believes he would have been able to "prove" through the lost records would have ultimately been material to his retaliation claims. As explained in more detail, *infra,* the alleged spoliation supposedly related to the Defendants' actions in cancelling the private bid program and cancelling a particular bid on Plaintiff's preferred property. Plaintiff's retaliation claim, based on cancellation of the private bid program, was ultimately dismissed on legislative immunity grounds. And his retaliation claim based upon Defendants' alleged cancellation of his bid on the "preferred property" is belied by undisputed evidence in the case record. Accordingly, Plaintiff's vague allegations about the destruction of evidence are insufficient to state a plausible basis for spoliation sanctions.

pending the Court's ability to review the pleading in accordance with its obligations under 28 U.S.C. §§1915 and/or 1915A. ECF No. 146. By Order entered on July 31, 2018, Judge Hornak directed Plaintiff to effectuate service of process – or waiver of same – by September 4, 2018. ECF No. 151. Judge Hornak expressly advised that the Court's Order did not constitute a finding that the complaint adequately set forth a claim for relief under applicable law. *Id.* The docket does not reflect that Plaintiff filed any proof of service, nor does it appear that USM 285 forms were ever received for the newly added Defendants, so as to permit an order of service by the U.S. Marshal Service. Nevertheless, Defendants filed their pending motion to dismiss on November 2, 2018. Quite independent of Defendants' request for dismissal, this Court has an obligation under 28 U.S.C. §1915(e)(2) to review the Complaint and dismiss the action if "at any time" the Court determines that the Complaint fails to state a claim upon which relief can be granted. Accordingly, nothing about the current procedural posture of this case prevents the Court from determining the legal sufficiency of Plaintiff's claims.

Plaintiff next argues that, even if spoliation is not the basis of an independent claim, he may be able to pursue a remedy through traditional theories of bailment or negligence. The simple response to this line of argument is that Plaintiff did not assert such claims, and for reasons discussed below, the Court finds that further amendment of Count I is inappropriate.

Plaintiff also argues that, if his spoliation claim is not actionable because it is premature, then he is entitled to a stay of this related action pending resolution of the original litigation in Civil Action No. 1:14-cv-49. This argument misapprehends the central problem with Plaintiff's spoliation claim: it is not deficient because of a lack of *ripeness*; rather it is deficient because spoliation is not recognized under Pennsylvania law as an independent basis for a lawsuit.

This notwithstanding, Plaintiff urges the Court to recognize, "as a matter of first impression," that "a cause of action for spoliation can and *must* exist in federal court . . . ." ECF No. 162 at 5. In essence, Plaintiff reasons that an independent cause of action is necessary as a means to vindicate federal rights. But federal courts have ample means at their disposal to address discovery abuses and ensure the vindication of federal rights, both through their sanctioning power under the Federal Rules of Civil Procedure and through their inherent civil contempt powers. Plaintiff has cited no persuasive law to support the claim in Count I, and the Court declines his invitation to recognize a federal cause of action for spoliation as a matter of first impression. *See Paluch v. Sec'y Pa. Dep't Corr.,* 442 F. App'x 690, 694-95 (3d Cir. 2011) (affirming dismissal of plaintiff's complaint and noting, with regard to claim predicated on alleged spoliation, that "[Plaintiff] has pointed to no authority that allows for a freestanding spoliation action under federal law and, to the extent that he sought to invoke the District Court's supplemental jurisdiction, Pennsylvania has not recognized an independent action for spoliation."); *accord Ball v. Beckley,* No. 1:11-CV-1829, 2012 WL 3579583, at *12 (M.D. Pa. July 13, 2012) (opining that plaintiff's claim of spoliation, standing alone, did not state a claim upon which relief could be granted), *report and recommendation adopted,* No. 1:11-CV-1829, 2012 WL 3579614 (M.D. Pa. Aug. 17, 2012).

### B. Count II: Plaintiff's Claim Based on Alleged "Deliberate Indifference"

In Count II of his complaint, Plaintiff asserts a claim against the named Defendants under 42 U.S.C. §1983 for "deliberate indifference." In essence, Plaintiff's theory is that the alleged destruction of records sabotaged his ability to successfully prosecute his First Amendment retaliation claim and thereby denied him his right to a fair trial.

As discussed, a plaintiff asserting a §1983 claim must allege that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants correctly note that federal law does not prohibit "deliberate indifference" (a form of *mens rea*) in the abstract. Rather, it is incumbent upon Plaintiff to allege that the Defendants violated a federally guaranteed right. To that end, Plaintiff insists that he is alleging, in Count II, the violation of three separate constitutional rights, *to wit*:

> (1) the 14th Amendment due process right to have records the county normally preserves for others, protected for this plaintiff for this action after plaintiff gave them notice of the action by actually sending the complaint to them; (2) the 1st and 14th Amendment rights to a full and fair trial; and (3) the 1st Amendment right not to be retaliated against by cancelling his bid and denying him the right to bid for the rest of his life, for sending a complaint to the defendants.

ECF No. 162 at 12-13. None of these theories is viable in the context of this case.

To state a claim for a procedural due process violation, a plaintiff must allege (1) the deprivation of "an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,'" and must also show that (2) "the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). Plaintiff's due process claim fail to state a basis for relief because he did not have a constitutionally protected interest in the unidentified records that were supposedly destroyed. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (holding that the Fourteenth Amendment does not mandate a right of access to government information or sources of information with the government's control); *Bonnet v. Ward Cty., Tex.*, 539 F. App'x 481, 483 (5th Cir. 2013) (applying *Houchins,* and affirming district court's determination that a landman did not have a constitutionally protected liberty or property interest in accessing county records for purposes of conducting title searches); *Miramontes v. Zellerbach*, No. EDCV 13-0027-JFW

RNB, 2014 WL 793143, at *7 (C.D. Cal. Feb. 26, 2014) (holding that plaintiff did not have a constitutionally protected liberty interest, pursuant to California's Public Records Act, in obtaining access to a police dispatch tape recording for purposes of challenging his conviction and sentence; noting that " federal courts have held that other states' comparable public disclosure laws do not give rise to a liberty or property interest protectible by the Fourteenth Amendment") (citing authority). Because Plaintiff has not plausibly alleged the deprivation of a constitutionally protected property or liberty interest, he cannot state a due process violation.

Plaintiff also purports to assert a claim predicated on the alleged denial of his right to a fair trial. Although Plaintiff invokes the Sixth Amendment, the rights afforded under that amendment apply only in criminal cases. *See* U.S. Const. amend VI; *Hester v. U.S.*, --- U.S. ---, 139 S. Ct. 509, 10-11 (noting, in dicta, that "the Sixth Amendment's jury trial right expressly applies [i]n all criminal prosecutions") (internal quotation marks and citation omitted; alteration in the original). The Court assumes, therefore, that Plaintiff might be attempting to state a claim for the alleged violation of his right to a jury trial under the Seventh Amendment, or his right of access to the courts under the First Amendment. In either case, Plaintiff's complaint fails to state a plausible constitutional violation.

The [Seventh] Amendment was designed to preserve the basic institution of jury trial in only its most fundamental elements." *Galloway v. United States*, 319 U.S. 372, 392 (1943). The Seventh Amendment right to trial is only implicated where there are issues of fact to be determined. *Berger v. Hahnemann Univ. Hosp.*, 765 F. App'x 699, 704 (3d Cir. 2019) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979)).

Here, the spoliation that allegedly took place could not have impacted Plaintiff's Seventh Amendment rights for the simple reason that Plaintiff's underlying claims ultimately lacked legal

and factual merit, and the evidence that Plaintiff alleges was destroyed would not have otherwise saved his claims. According to the complaint, the unspecified lost records would have established, in part, that the Defendant Commissioners terminated the private bidding program shortly after the Defendants received Plaintiff's December 23, 2013 correspondence and draft complaint. Compl. ¶36. Presumably, Plaintiff would have used this information in support of his First Amendment claim that the Defendant Commissioner's retaliated against him by cancelling the private bid program. But this claim was previously dismissed on the basis of absolute legislative immunity. Therefore, possession of the "lost" records would not have made it any more likely that Plaintiff's retaliation claim would get to a jury.

The Complaint also alleges that the unidentified lost records would have established that, on January 17, 2014, Plaintiff placed a timely bid on his preferred property (i.e., the Hartzell property), that his was the only bid for that property, and that the Defendant Commissioners nevertheless "cancelled" his bid. Compl. ¶36. But Plaintiff's averment that he could have proved the "cancellation" of his bid is implausible in the face of uncontroverted evidence that the Defendant Commissioners actually *approved* Plaintiff's bid on the Hartzell property, and that it was in fact *Plaintiff* who decided to waive his right to buy that parcel. *See* Civil Action No. 1:14-cv-49 at ECF No. 168-1 at 9, ¶¶15-16; *id.* at 30-33. Thus, Plaintiff has failed to allege a plausible violation of his Seventh Amendment rights based upon the Defendants' alleged destruction of county records relative to Plaintiff's January 17, 2014 bid on his preferred property.

For similar reasons, Plaintiff's allegations cannot be construed as alleging a plausible violation of his right to access the courts. To state this type of claim, a plaintiff must allege that his access to the courts was impaired, and that he suffered actual injury because of the

defendants' actions. *See Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). Actual injury results when a plaintiff "has been hindered in an effort to pursue a nonfrivolous legal claim," *id.*, which includes "the loss or rejection of a legal claim." *Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir. 1997); *see also Lewis v. Casey*, 518 U.S. 343, 349-51 (1996). Because Plaintiff cannot plausibly allege the loss or rejection of a legal claim stemming from the alleged spoliation of the unspecified documents, he cannot state a claim predicated on the denial of access to the Courts.

As for Plaintiff's representation that he is also alleging, in Count II, a violation of his First Amendment right "not to be retaliated against by cancelling his bid and denying him the right to bid for the rest of his life," this is merely a restatement of claims that Plaintiff previously asserted in the underlying civil rights litigation at Civil Action 1:14-cv-49. Plaintiff cannot revive, through a separately filed complaint, the First Amendment claims that were previously dismissed or that are now subject to summary judgment in the original civil rights lawsuit. As no viable claim has been stated in Count II, that cause of action will be dismissed.

### C. Amendment

As a general rule, when courts dismiss a claim pursuant to Rule 12(b)(6), they must allow the plaintiff leave to amend, unless doing so would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, the Court finds that further amendment would be futile, because the deficiencies in the Complaint are not amenable to be remedied upon repleading. Even if that were not so, given the age and prolixity of this case, and the delay that would result from additional pleading, the Court finds that allowing further amendment would unduly prejudice the Defendants and would be inequitable. Accordingly, the Complaint in Civil Action 2:18-cv-388 will be dismissed with prejudice and without leave to amend.

## V. CONCLUSION

Based upon all of the foregoing reasons, Plaintiff's motion to strike the Defendants' exhibits will be denied. Plaintiff's motion to reopen discovery and request to file a Rule 56(d) affidavit under seal will likewise be denied. The Court will grant Defendants' motion for summary judgment relative to the remaining claims in Case No. 1:14-cv-49. Pursuant to the mandates of 28 U.S.C. §1915(e)(2), the Court will dismiss, with prejudice, the claims asserted in Case No. 2:18-cv-388. The Court will grant Defendants' motion to dismiss the claims in Case No. 2:18-cv-388 to the extent that motion accords with this Court's analysis under 28 U.S.C. §1915(e)(2). Defendants' motion to dismiss for failure to effectuate service will be denied as moot.

An appropriate Order follows.

_Susan Paradise Baxter_
SUSAN PARADISE BAXTER
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MEL MARINKOVIC,        )
                                  )

               **Plaintiff,**       )     **Case No. 1:14-cv-49 and**

          **v.**                )     **Case No. 2:18-cv-388**

                                  )

**DAVID K. BATTAGLIA, et al.,**    )
                                  )

            **Defendants.**    )

## ORDER OF JUDGMENT AND DISMISSAL

AND NOW, this 23rd day of September, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that Plaintiff's Motion to Strike Defendants' Exhibits, ECF No. [171], shall be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Reopen Discovery and Request to File Rule 56(f) Affidavit Under Seal, ECF No. [172], shall be, and hereby are, DENIED.

IT IS FURTHER ORDERED that the Defendants' Motion for Summary Judgment relative to the remaining claims in Case No. 1:14-cv-49, ECF No. [165], shall be, and hereby is GRANTED. In accordance with the foregoing, JUDGMENT is hereby entered in favor of Defendants David K. Battaglia, Robert T. Bower, and Richard L. Fink, and against Plaintiff Mel Marinkovic with respect to Plaintiff's First Amendment retaliation claim based upon the alleged cancellation of his property bids and Plaintiff's "Class of One" Equal Protection Claim.

IT IS FURTHER ORDERED that, in accordance with the Court's obligations under 28 U.S.C. §1915(e)(2), the claims asserted in Case No. 2:18-cv-388 shall be, and hereby are, DISMISSED with prejudice.

1

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss the claims in Case No. 2:18-cv-388 pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. [157], shall be, and hereby is, GRANTED to the extent the motion accords with the Court's analysis herein; in all other respects, the motion is DENIED as moot.

Finally, IT IS ORDERED that the Defendants' Motion to Dismiss the claims in Case No. 2:18-cv-388 for failure to effectuate service, pursuant to Federal Rule of Civil Procedure 12(b)(5), ECF No. [157], shall be, and hereby is, DENIED as moot.

There being no other outstanding claims pending before the Court in these consolidated actions, the Clerk is hereby directed to mark them "CLOSED."


SUSAN PARADISE BAXTER
United States District Judge